IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**JONATHAN LOPEZ** and
**JOY WOOLEY**,
individually and on behalf
of all others similarly situated,

                Plaintiffs

                Case No. 18-cv-492

    v.

**GREAT DIVIDE AMBULANCE SERVICE, et al.**,

                Defendants.

**JOINT MOTION FOR COURT APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE**

Pursuant to Fed. R. Civ. P. 7(b), the parties, by their undersigned counsel, hereby respectfully move the Court for an order to: (a) approve their Settlement Agreement; and (b) upon approval of the Settlement Agreement, dismiss this action with prejudice and without further costs to any party pursuant to Fed. R. Civ. P. 41. In support of this Motion, the parties state as follows:

This is an action brought under the Fair Labor Standards Act ("FLSA"). The parties have reached a settlement. Pursuant to that settlement, in exchange for a monetary payment, Plaintiffs and opt-in class members are required to dismiss their FLSA claims with prejudice and release Defendants from any further liability under the FLSA for the time period in question. A copy of the parties' Settlement and Release Agreement ("Settlement Agreement") is being filed as Exhibit A to this

Motion. However, in order for a private settlement of FLSA claims to be enforceable, the settlement must be approved by the Department of Labor ("DOL") or a district court. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Adams v. Walgreen Co.*, No. 14-cv-1208-jps, 2015 WL 4067752, at *1 (E.D. Wis. July 2, 2015). The standard for evaluating such settlements is to determine whether it constitutes "a fair and reasonable resolution of bona fide disputes under the FLSA." *Lynn Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Walton*, 786 F.2d at 306; *Armstrong v. Wasatch Front Home Servs., LLC*, 2012 U.S. Dist. LEXIS 85378 (W.D. Wis. June 20, 2012, Conley, J.); *Ayala v. Startek Workforce Solutions, LLC*, 2017 U.S. Dist. LEXIS 156153 (W.D. Wis. Sept. 25, 2017, Crabb, J.). This settlement is a fair and reasonable resolution of the disputed issues, which will result in significant payment to the collective class members in exchange for the release of their claims under the FLSA. Because the parties believe this settlement represents a fair result for the class, they are seeking this Court's approval of their Settlement Agreement along with dismissal of the action with prejudice.

## FACTUAL BACKGROUND

Great Divide Ambulance Service ("GDAS") is a joint venture of the Townships of Drummond, Cable, Grand View, and Namakagon, Wisconsin. GDAS is a licensed paramedic level provider, providing emergency response, interhospital transfers, and critical care transports in Bayfield County, Wisconsin. GDAS and the Townships of Drummond, Cable, Grand View, and Namakagon (collectively, "Defendants") employed paramedics and/or emergency medical technicians ("EMTs").

Paramedics and EMTs employed by Defendants were typically scheduled to work 24-hour shifts. During their shifts, paramedics and EMTs were assigned to one of Defendants' stations and waited at those stations to respond to emergency calls and requests for transfer. Paramedics and EMTs were required to respond to calls within five minutes. Paramedics and EMTs employed by Defendants were required to go in uniform, with their partner, and in the ambulance if they wanted to leave the station during their 24-hour shifts so they could respond to calls within the five-minute window. When not out on a call, paramedics and EMTs employed by Defendants were required to perform various tasks at the station, including inventory checks, stocking, vehicle maintenance, and completing reports and charting. Paramedics and EMTs employed by Defendants were paid a "day rate" for 12 hours of their 24-hour shifts, a "night rate" for the other 12 hours of their 24-hour shifts, and additional payments for each transfer conducted while on shift. Defendants did not pay overtime wages to paramedics and EMTs when they worked in excess of 40 hours in a workweek.

On June 27, 2018, Class Representatives, Jonathan Lopez and Joy Wooley, filed a lawsuit under the FLSA, 29 U.S.C. § 201, et seq., as a collective action to recover unpaid overtime wages. (Dkt. # 1.) In their Complaint, Lopez and Wooley allege that Defendants failed to pay overtime wages to them and other similarly-situated individuals for a period dating back to June 27, 2015. Defendants filed an Answer denying the material allegations in the Complaint on July 31, 2018. (Dkt. # 12.) On August 30, 2018, the parties stipulated to conditional certification of the

collective class. (Dkt. # 17.) After the Court approved the Stipulation and the form of the notice, Defendants provided mailing information for 46 individuals meeting the class definition. Counsel for Lopez and Wooley ("Class Counsel") mailed notice to the collective class. A total of 12 individuals, including the Class Representatives, filed consent forms to join the collective class (the "collective class members"). (Dkts. ## 1.1, 1.2, 3, 9, 21-26.)

Following the close of the notice period, the parties agreed to explore whether it would be possible to resolve this matter. Defendants provided Class Counsel with the payroll information for the 12 collective class members that included all forms of pay for July 2015 through June 2018 as well as work calendars covering the majority of the statutory period. Class Counsel calculated the claim values for each collective class member using the data and discovery documents produced by Defendants. First, Class Counsel determined the number of hours worked per workweek by each collective class member. Defendants did not maintain records of the hours worked by the collective class members on a week-to-week basis. From the start of the statutory period through January 2017, Defendants paid wages every four workweeks. From February 2017 to the present, wages have been paid biweekly. As most collective class members worked a consistent schedule with similar hours each workweek, Class Counsel used a formula to calculate the number of hours worked per workweek. For the period when collective class members were paid every four weeks, overtime hours were those over 160 in the pay period; for the period when collective class members were paid biweekly, hours over 80 were considered overtime.

For collective class members who did not work a consistent schedule, Class Counsel reviewed the work schedules and manually entered the correct number of overtime hours worked per week. Class Counsel then calculated the regular rate of pay for each workweek by adding all of the types of compensation earned by opt-ins in a given pay period and dividing this by the total hours worked in the pay period to determine the regular, hourly rate of pay. If this calculation resulted in a regular rate below the minimum wage, $7.25 was used as the regular rate. The regular rate was divided in half to determine the overtime premium owed for each overtime hour worked, and all overtime hours were multiplied by the overtime premium to determine the unpaid wages. These unpaid wages were then doubled to account for liquidated damages available under the FLSA. 29 U.S.C. § 216(b). Class Counsel calculated damages for the full three-year statute of limitations. The full value of the claims for these class members, including the three-year statute of limitations and application of liquidated damages available under the FLSA, was calculated at $300,959.00.

In addition to discussing damages, the parties discussed the underlying factual and legal issues in this matter. The primary area of dispute was whether time spent by the collective class members between emergency or transfer calls was compensable work time. The parties also disputed whether the collective class members would be able to demonstrate a willful violation by Defendants to support the application of a three-year statute of limitations and whether Defendants could demonstrate objective and subjective good faith in their actions as a defense against the award of

liquidated damages.

Counsel for the parties are experienced in litigating collective and class action wage and hour lawsuits under the FLSA and Wisconsin law. Based on their experiences, counsel engaged in arm's-length, good faith settlement negotiations on behalf of the collective class members in light of the disputed issues remaining to be resolved, the expense of continued litigation, and the inherent risks of litigation. The resulting settlement is for a total of $255,000.00. This settlement includes amounts to resolve the collective class members' FLSA claims in this matter and to recover for attorneys' fees and costs incurred by Class Counsel. The settlement will be paid as follows:

    a. Seventy-five percent of the settlement, or $191,250.00, to be paid on a pro-rata basis to the collective class members as consideration for the resolution of their FLSA claims for unpaid overtime wages and liquidated damages as asserted in this matter; and

    b. $63,750.00 to be paid to Hawks Quindel, S.C. for attorneys' fees and costs incurred by Class Counsel in prosecuting this matter.[1]

Collective class members will receive $191,250.00 as payment for their claims for unpaid overtime wages and liquidated damages under the FLSA. This represents 64% of their total potential damages if they were to prevail on all issues in this matter at trial, including a finding of willfulness extending the statute of limitations to the

---

[1] Class Counsel has executed fee agreements with the Class Representatives for compensation on a contingent basis of one-third of the full settlement fund plus actual costs. Given that this case has resolved early, Class Counsel has voluntarily reduced the requested attorneys' fees to 25%, inclusive of costs.

third year and an award of liquidated damages. This amount has been split amongst the collective class members on a pro-rata basis based on each collective class member's portion of the entire class's potential recovery at trial of $300,959.00.

This settlement is a fair and reasonable resolution of the *bona fide* dispute over the FLSA provisions raised by this lawsuit. *Lynn's Food Store, Inc.*, 679 F.2d at 1353. The parties have a real dispute in this case over whether the "on-call" time spent by collective class members waiting at Defendants' stations for emergency callouts constitutes compensable work under the FLSA. *See, e.g.*, *Dinges v. Sacred Heart St. Mary's Hosps.*, 164 F.3d 1056 (7th Cir. 1999) (employees could effectively spend time spent on "standby" for their own pursuits, so such time was not working time under the FLSA); *but see Renfro v. Emporia*, 948 F.2d 1529 (10th Cir. 1991) (firefighters required to report to the station within 20 minutes of receiving a page during their 24-hour shifts and called in an average of 3-5 times per on-call period were working throughout their shifts). In addition to this dispute, there is a genuine question of what remedies the collective class would be entitled to should liability be established. Whether the collective class would be able to demonstrate that Defendants acted willfully in order to get the third year of damages available under 29 U.S.C. § 255(a) or whether the Defendants acted in good faith and should escape payment of liquidated damages under 29 U.S.C. § 260 were also contested questions in this matter.

Individual collective class members stand to recover a significant amount in this settlement, demonstrating the reasonableness of the settlement. Factors

considered when reviewing settlement agreements for FLSA collective actions include "the range of reasonableness of the settlement fund in light of the best possible recovery [and] all the risks of litigation," such as the risks of establishing liability and damages. *Butz v. Automation Sols. of Am.*, No. 16-cv-696-jdp, 2017 U.S. Dist. LEXIS 142614, at *3 (W.D. Wis. Sep. 5, 2017) (citing *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010)).

In this matter, the full value for the collective class members, assuming that the Court found liability, made a finding of willfulness to award a third year of damages, and rejected any good-faith defense to liquidated damages, would be $300,959.00, plus any attorneys' fees and costs expended in getting to that result. The two-year claim value without any penalties for liquidated damages amounts to $112,177.66; the unliquidated third-year claim is valued at $38,301.84 for the collective class. The recovery of $255,000.00 for the collective class is significant in light of the risk of no recovery. After the requested attorneys' fees of one-quarter of the settlement fund, this amounts to a distribution of $191,250.00 to the collective class. Each collective class member is recovering the full value of their three-year claim, plus an additional percentage representing the FLSA liquidated damages penalties available to them. This settlement, therefore, represents a modest compromise on the full value of the collective class members' claims, particularly in light of Defendants' credible arguments against liability, a finding of willfulness, and an award of liquidated damages. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of

the total sought due to risks and costs of trial); *Smoot v. Wieser Bros. Gen. Contr.*, 2016 U.S. Dist. LEXIS 57148 (W.D. Wis. April 28, 2016, Peterson, J.) (approving an FLSA settlement where class members "will lose some of their liquidated damages to pay class counsel," this represented "only a modest compromise from the class members' point of view"); *contrast with Larkin v. CPI Corp.*, 2011 U.S. Dist. LEXIS 127680 (W.D. Wis. Nov. 3, 2011, Conley, J.) (reserving judgment on plaintiff's motion for approval of settlement where the parties provided insufficient information to allow the court to evaluate the reasonableness of the settlement).

In short, the Settlement Agreement was reached as a result of arm's-length negotiations between experienced counsel for the parties that considered the merits of Plaintiffs' claims and Defendants' defenses to the same, and reviewed an analysis of the evidence related thereto. The Settlement Agreement represents a fair resolution of Plaintiffs' claims in light of the foregoing and the *bona fide* legal and factual disputes that exist with regard to Plaintiffs' claims. The Settlement Agreement is between the collective class members and the Defendants only. Potential class members that have not joined the Lawsuit are not subject to, nor bound by, the Settlement Agreement. For all the foregoing reasons, Plaintiffs and Defendants request that the Court enter an order approving the Settlement Agreement and dismiss the case with prejudice and without further costs to either party pursuant to Fed. R. Civ. P. 41.

Dated this 5th day of April, 2019.

    Attorneys for the Collective Class

    By:   */s/David C. Zoeller*
    **HAWKS QUINDEL, S.C.**
    David C. Zoeller, State Bar No. 1052017
    Email: dzoeller@hq-law.com
    Caitlin M. Madden, State Bar No. 1089238
    Email: cmadden@hq-law.com
    Post Office Box 2155
    Madison, Wisconsin 53701-2155
    Telephone: (608) 257-0040
    Facsimile: (608) 256-0236

    Attorney for the Defendants

    By:   */s/Thomas A. Cabush*
    **KASDORF, LEWIS & SWIETLIK, S.C.**
    Thomas A. Cabush, State Bar No. 1019433
    Email: tcabush@kasdorf.com
    One Park Plaza, Suite 500
    11270 West Park Place
    Milwaukee, Wisconsin 53224
    Telephone: (414) 577-4000
    Facsimile: (414) 577-4400